# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | |
|---|---|
| **GEORGE BANKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case number 1:05CV0139 TCM** |
| ) | |
| **JOHN JORDAN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

This matter[1] is before the Court on a motion for summary judgment filed by defendants Beth Kelly and Kristin Kaufmann[2] [Doc. 81] (collectively referred to as Nurse Defendants) and a motion for summary judgment filed by defendants John Jordan and Captain Mulcahy[3] [Doc. 88] (collectively referred to as Jail Official Defendants). Plaintiff George Banks (Plaintiff) filed opposition to these motions. Defendants' motions, as well as Plaintiff's opposition, are accompanied by supporting materials including affidavits, deposition excerpts, and interrogatory answers.

## Background

---

[1] The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2] These Defendants were identified as "Two Unknown Nurses" in Plaintiff's pro se complaint. (Compl. at 6 [Doc. 1].) Throughout the record Defendant Kaufmann's last name is spelled "Kaufman" and "Kaufmann." She signed an affidavit by spelling her name "Kaufmann" (Defendant Kaufmann's Aff., Ex. C attached to Nurse Defs.' Mem. Law Supp. Mot. Summ. J. [Doc. 82-2]). The Court will refer to her as Defendant Kaufmann.

[3] In Plaintiff's pro se complaint, these Defendants were identified as "John Jordan, Sheriff of Cape Girardeau County Jail" and "Captain Maugahi." (Compl. at 6 [Doc. 1].)

Through a pro se complaint and pro se supplements to the complaint, Plaintiff seeks equitable and monetary relief under 42 U.S.C. § 1983 for Defendants' alleged violation of his constitutional rights while he was detained in the Cape Girardeau County, Missouri, jail (Jail). (Complaint and its supplements [Docs. 1, 5, 11, 12, 19, 24, and 35].) Defendants filed answers to Plaintiff's complaint. (Answers [Docs. 16 and 29].) Then, after the Court appointed counsel for Plaintiff and the parties had an opportunity to engage in discovery, Defendants filed the summary judgment motions now under consideration.

Only Plaintiff's constitutional claims are before the Court. (Order, dated September 26, 2005 ("plaintiff's claims regarding constitutional violations survive review under 28 U.S.C. § 1915(e)(2)(B)") [Doc. 8]). In addition to setting forth constitutional claims regarding the lack of wholesome food, the lack of a law library, and inadequate medical care at the Jail, Plaintiff alleged

> There are no caseworkers or social workers. Canteen items are sold at consumer fraud prices and they are selling molded food after exp[i]ration dates. . . . There is no gym. People are on lockdown approximately 18 hour[s] a day. . . . Other pods are treated different than most of us federal prisoner[s]. There are no G.E.D. Program[s] for these youths in here. No razors, etc.

(Compl. at 6 [Doc. 1].) Plaintiff's claims regarding the Jail's canteen, the lack of a gym at the Jail, and the absence of razors, do not present constitutional claims, so they are not now before the Court. A challenge to the charges or items available at a prison's commissary or canteen do not present a constitutional claim. **Oliver v. Greenwell**, No. 1:05-CV-111-LMB, 2005 WL 2406015, at *3 (E.D. Mo. Sept. 29, 2005) (sua sponte dismissing a prisoner's challenge to items not available at the prison canteen); **Poole v. Stubblefield**, No. 4:05-CV-1005-TCM,

2005 WL 2290450, at *2 (E.D. Mo. Sept. 20, 2005) (<u>sua</u> <u>sponte</u> dismissing a prisoner's challenge to taxes on the prison's commissary items). Plaintiff's claim that the Jail has "no gym" also is not a constitutional claim because Plaintiff does not allege he was denied an adequate opportunity for exercise, only that the Jail lacked a gym. Such an allegation does not state a constitutional violation and is not, therefore, before the Court. **Oliver**, 2005 WL 2406015, at *3 (<u>sua</u> <u>sponte</u> dismissing a prisoner's challenge to not having outdoor exercise). In and of itself, the lack of razors also does not rise to the level of a constitutional claim. **Bales v. Ault**, No. C03-4051-MWB, 2004 WL 42647, at *7-*8 (N.D. Iowa Jan. 8, 2004) (dismissing a prisoner's constitutional challenge to a prohibition against possessing an electric razor or beard trimmer). Moreover, Plaintiff may not present the claims of others at the Jail. <u>See</u> **Martin v. Sargent**, 780 F.2d 1334, 1337 (8th Cir. 1985). So, the claims regarding the absence of case workers and social workers, the GED program, the lockdown, and treatment of prisoners on a different "pod" are also not before the Court.

Therefore, only Plaintiff's claims that Defendants violated his constitutional rights due to the lack of wholesome food, the lack of a law library, and the provision of improper medical care to Plaintiff are before the Court. In their brief and motion, Jail Official Defendants point out the record indicates Plaintiff "does not intend to adduce evidence as to" the claims about the lack of a law library and of wholesome food. (Jail Official Defs.' Mot. Summ. J. at 1 [Doc. 88], Jail Official Defs.' Mem. Law Supp. Mot. Summ. J. at 1 [Doc. 89]; Pl.'s Answers to Interrogs. Nos. 14 and 15 attached to Jail Official Defs.' Mot. Summ. J. [Doc. 88-4], Paragraphs 2 and 3 of Jail Official Defs.' Statem. Undisp. Mat. Facts and Pl.'s Resp. to that

Statem. [Docs. 89 and 96].)  Due to this record, those constitutional claims will be dismissed, and the only constitutional claim remaining before the Court is Plaintiff's claim that Defendants provided him with inadequate medical care.

With respect to that claim, the undisputed record discloses that, pending trial on federal criminal charges, Plaintiff was detained at the Jail from late July 2005, until August 28, 2006, except for the period between October 31, 2005, and February 7, 2006, when he was transferred out of the Jail for a psychological examination.  (Paragraphs 1, 21, and 22 of Nurse Defs.' Statem. Uncontr. Mat. Facts, Plaintiff's Resp. to that Statem., and Nurses Defs.' Reply to that Resp.  [Docs. 82, 84, and 91].)

Defendant John Jordan is the Sheriff of Cape Girardeau County.  (Paragraph 4 of Jail Official Defs.' Statem. Undisp. Mat. Facts [Doc. 89] and Pl.'s Resp. to that Statem. [Doc. 96].) The Cape Girardeau County Sheriff's Department manages the Jail.  (Id. at para. 6.)  Defendant James Mulcahy is the Jail Administrator.  (Id. at para. 5.)  As the Jail Administrator, Defendant Mulcahy is in charge of the staff, policies, and procedures at the Jail, and oversees the daily operation of the Jail.  (Id. at para. 7.)

The Jail provides healthcare personnel, including a doctor and nurses, to consult with Jail inmates when necessary.  (Id. at paras. 11, 16, and 18; paragraph 23 of Nurse Defs.' Statem. of Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply to that Resp. [Docs. 82, 84, and 91]; "Health Care" section of Cape Girardeau County Jail Inmate Rules Handbook, Ex. 41 attached to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts [Doc. 96-8].)  The Jail hired Advanced Correctional Healthcare to provide medical care

and services to those at the Jail. (Paragraph 10 of Jail Official Defs.' Statem. Undisp. Mat. Facts [Doc. 89] and Pl.'s Resp. to that Statem. [Doc. 96].) Advanced Correctional Healthcare provides the nurses and physicians working at the Jail. (Id. at paras. 11 and 18; Fritsch Dep. at 45, Ex. AA attached to Nurse Defs.' Reply Mem. to Pl.'s Mem. Opp'n to Nurse Defs.' Mot. Summ. J. at 2 [Doc. 93-4].)

The Jail physicians are present at the Jail for approximately two hours a week for sick call and are otherwise on call. (Id.; Mulcahy Dep. at 27, Ex. 2 attached to Jail Official Defs' Mot. Summ. J. at 10 [Doc. 88-2].) During the time Plaintiff was detained at the Jail, Dr. Babich or Dr. Babbage was the Jail physician until about October 1, 2005, when Dr. William Fritsch became the Jail's physician. (Fritsch Dep. at 8, Ex. 11a attached to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts at 2 [Doc. 96-2]; Kelly Dep. at 24, Ex. 1a attached to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts at 4 [Doc. 96-1].)

Nurses are present at the Jail for ten to twelve hours each day of the week (Mulcahy Dep. at 16 and 26, Ex. 2 attached to Jail Official Defs.' Mot. Summ. J. at 7 and 9 [Doc. 88-2]) and assess whether Jail inmates need medical treatment (Paragraph 17 of Pl.'s Statem. of Mat. Facts and Nurse Defs.' Resp. to that Statem. [Docs. 85 and 92]). Defendant Kelly worked as a nurse at the Jail throughout Plaintiff's detention and was the site supervisor. (Kelly Dep. at 8, Ex. 1a attached to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts at 2 [Doc. 96-1]). Defendant Kaufmann worked as a nurse at the Jail during the first period of time Plaintiff was detained there, but was no longer working at the Jail when Plaintiff returned there in February 2006. (Kaufmann Aff. at para. 18, Ex. C attached to Nurse Defs.' Statem.

Uncontr. Mat. Facts [Doc. 82-3]; Paragraph 22 of Nurse Defs.' Statem. Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply to that Resp. [Docs. 82, 84, and 91].) Nurse Defendants were not the only nurses assigned to the Jail during the time Plaintiff was detained there. (Paragraph 23 of Nurse Defs.' Statem. of Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply to that Resp. [Docs. 82, 84, and 91].)

Jail inmates seeking non-emergency medical attention from the Jail's medical personnel had to submit a medical care request form to the staff. (Paragraph 14 of Jail Official Defs.' Statem. Undisp. Mat. Facts [Doc. 89] and Pl.'s Resp. to that Statem. [Doc. 96].) While at the Jail, Plaintiff submitted multiple medical care request forms. (Id. at para. 15.) Non-emergency medical care of Plaintiff outside of the Jail required the approval of the United States Marshals Service. (Paragraph 22 of Jail Official Defs.' Statem. Undisp. Mat. Facts and Pl.'s Resp. to that Statem. [Docs. 89 and 96].)

While he was at the Jail, Plaintiff also submitted a number of grievances, some of which were directed to the medical care he was receiving. (Paragraph 6 of Nurse Defs.' Statem. Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply to that Resp. [Docs. 82, 84, and 91]; Exs. 37a and 37b attached to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts [Docs. 96-5 and 96-6].) The Jail's medical staff reviewed grievances regarding medical care at the Jail. (Paragraph 9 of Jail Official Defs.' Statem. Undisp. Mat. Facts [Doc. 89] and Pl.'s Resp. to that Statem. [Doc. 96].)

Plaintiff was seen by nurses at least fourteen times and by a physician at least five times for various complaints during his first stay at the Jail between August 1, 2005, and October 30,

2005.  (Paragraph 18 of Nurse Defs.' Statem. Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply to that Resp. [Docs. 82, 84, and 91].)   Plaintiff also received various medications, had routine blood pressure readings, had routine "peak flow" readings, and had labs drawn twice during that time.  (Paragraphs 17, 19, and 20 of Nurse Defs.' Statem. Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply to that Resp.  [Docs. 82, 84, and 91]; Ex. K attached to Mem. of Law in support of Nurse Defs.' Mot. Summ. J. [Doc. 82-11].)

Plaintiff returned to the Jail in February 2006 with a diagnosis of and medication for glaucoma, among other conditions.  (St. Anthony Hosp., Okla., Medical Record, dated Feb. 1, 2006, Ex. S Attached to Nurse Defs.' Mem. Law Supp. Mot. Summ. J. [Doc. 82-19]; Jail Medical Progress Note, dated Feb. 7, 2006, Ex. 15 attached to Pl.'s Statem. Undisp. Mat. Facts [Doc. 85-14].)  The undisputed record further reveals that, during his detention at the Jail in 2006, Plaintiff received medical care, including medications, made visits to an ophthalmologist, and had eye surgery.  (See, e.g., Request Slip for Medical Care, dated Feb. 8, 2006, Ex. 16 attached to Pl.'s Statem. Undisp. Mat. Facts [Doc.85-15]; Request Slip for Medical Care, dated Feb. 10, 2006, Ex. 17 attached to Pl.'s Statem. Undisp. Mat. Facts [Doc. 85-16], Prisoner Medical Attention Notice, Ex. 20 attached to Pl.'s Statem. Undisp. Mat. Facts [Doc. 85-19], Medical Progress Notes for Feb. 17, 2006, Ex. 21 attached to Pl.'s Statem. Undisp. Mat. Facts  [Doc. 85-20]; Inmate Grievance Form, dated May 8, 2006, Ex. 37 at 76 [Doc.  96-6 at 18]; Inmate Grievance Form, dated July 23, 2006 [Doc. 96-6 at 52]; Medication Administration Records for February through April 2006, Ex. L attached to Mem. Law Supp.

Nurse Defs.' Mot. Summ. J. [Doc. 82-12].)

During a visit with the Jail physician, Plaintiff could tell the doctor any complaint he had. (Fritsch Dep. at 54, Ex. AA attached to Nurse Defs.' Reply Mem. to Pl.'s Mem. in Opp'n to Nurse Defs.' Mot. Summ. J. at 3 [Doc. 93-4].)

In their affidavits, Nurse Defendants aver that they met the standard of care of a duly licensed nurse in the State of Missouri. (Kelly Aff. at para. 29 and Kaufmann Aff. at para. 30 Exs. B and C, respectively, attached to Nurse Defs.' Mem. Law Supp. Mot. Summ. J. [Docs. 82-2 and 82-3].) Plaintiff has not presented a medical professional's sworn affidavit or testimony that the medical care provided to Plaintiff during his stay at the Jail was not adequate. Plaintiff has not presented medical evidence that any medical treatment he received while at the Jail adversely affected any condition he had or any prognosis for any condition he had, including glaucoma.

Additional undisputed facts will be mentioned as needed in the discussion of the motions for summary judgment.

## Discussion

Before addressing the motions for summary judgment, the Court will clarify the status of Plaintiff's remaining constitutional claim for inadequate medical care. First, Plaintiff's requests for equitable relief will be dismissed as moot because the record reveals, through Plaintiff's Notices of Change of Address (Docs. 23, 94, and 98), that he has been transferred out of the Jail and is not now detained there. See, e.g., **Smith v. Hundley**, 190 F.3d 852, 855-56 (8th Cir. 1999) (prisoner's transfer to a different facility mooted his § 1983 action for

equitable relief for the alleged violation of his First Amendment rights by officials at the first facility). Even though Plaintiff is no longer in the Jail, he may still pursue his damages claims under 42 U.S.C. § 1983 for Defendants' alleged violation of his constitutional rights while he was there. **Martin**, 780 F.2d at 1337. Therefore, the motions for summary judgment will be considered only with respect to Plaintiff's claim for damages due to Defendants' alleged constitutional violations in providing medical care to Plaintiff.

Second, Plaintiff apparently seeks relief based on Defendants' individual and official capacities, based on the statement in his pro se complaint that "[w]hile acting individually in an official capacity under the color of law" Defendants violated Plaintiff's constitutional rights. (Compl. at 6 [Doc. 1].) Individual liability under 42 U.S.C. § 1983 requires "a causal connection between the misconduct complained of and the official sued." **Harris v. Pirch**, 677 F.2d 681, 685 (8th Cir. 1982); **Reinhart v. City of Md. Heights**, 930 F. Supp. 410, 416 (E.D. Mo. 1996). Official capacity claims against government officials are basically claims against the governmental entity itself. **Brockinton v. City of Sherwood, Ark.**, 503 F.3d 667, 674 (8th Cir. 2007). For a governmental entity to be liable under § 1983, this circuit consistently recognizes that an individual must first be found liable on the underlying claims. **Id.**; see **Whittle v. Blankenship**, No. 4:06CV1014 ERW, 2007 WL 4287725, at *8 (E.D. Mo. Dec. 5, 2007) (finding a county defendant not liable on a pretrial detainee's § 1983 claim for deliberate indifference to plaintiff's serious medical needs, among other § 1983 claims, because the individual defendants were not found liable on those claims). The Court will first address

the summary judgment motions as focused on the claims against Defendants in their individual capacity and then will address the motions as focused on the claims against Defendants in their official capacity.

In their summary judgment motion, Nurse Defendants argue that they are entitled to qualified immunity and that Plaintiff's allegations lack merit in that Nurse Defendants did not owe the duties alleged by Plaintiff, did not have the authority to carry out the obligations Plaintiff seeks to impose, and complied with physicians' orders in providing care to Plaintiff. With respect to Plaintiff's medical care, Nurse Defendants' summary judgment motion specifically addresses Plaintiff's allegations regarding a thumb infection, the administration of medications, and glaucoma. Plaintiff opposes this motion on the grounds significant factual disputes exist regarding whether the Nurse Defendants knew Plaintiff had glaucoma, a serious medical condition, and whether the Nurse Defendants were deliberately indifferent to Plaintiff's needs regarding his glaucoma.

Jail Official Defendants move for summary judgment on the grounds there are no genuine issues of material facts and the undisputed facts show that Plaintiff was provided with proper medical care, that Plaintiff was not treated with deliberate indifference, and that Jail Official Defendants are entitled to qualified immunity. (Page 1 of Jail Official Defs.' Mem. Law and Statem. Undisp. Mat. Facts Supp. Mot. Summ. J. [Doc. 89].) Plaintiff opposes this motion on the grounds genuine issues of material fact exist regarding Defendant Jordan's knowledge of Plaintiff's serious medical needs, whether the Jail Official Defendants were deliberately indifferent to Plaintiff's serious medical needs, and whether those Defendants are

protected from liability based on qualified immunity.

Summary judgment standard. Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986) (quotation marks omitted) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (citations omitted).

The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). Instead, the non-moving party bears the burden of setting forth specific facts by affidavit or otherwise showing that there is a genuine issue for trial. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986); **Palesch v. Missouri Comm'n on Human Rights**, 233 F.3d 560, 565-66 (8th Cir. 2000). All disputed facts are to be resolved, and all inferences are to be drawn, in favor of the non-moving party. See **Ghane v. West**, 148 F.3d 979, 981 (8th Cir. 1998); **Kopp v. Samaritan Health Sys., Inc.**, 13 F.3d 264, 269 (8th Cir. 1993). "[I]n

order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." **Webb v. Lawrence County**, 144 F.3d 1131, 1135 (8th Cir. 1998). See also **Stanback v. Best Diversified Prods., Inc.**, 180 F.3d 903, 909 (8th Cir. 1999) (finding general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion).

The Court analyzes a pretrial detainee's constitutional claim regarding the denial of proper medical care under the Fourteenth Amendment, using the Eighth Amendment's deliberate indifference standard. **Vaughn v. Greene County, Ark.**, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard for pretrial detainees [pursuing § 1983 claims regarding medical care], we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates" (citation omitted)); see also **Hartsfield v. Colburn**, 491 F.3d 394, 396 (8th Cir. 2007) (Eighth Amendment deliberate indifference standard applies to pretrial detainee's claim regarding medical care), cert. denied, 128 S. Ct. 1745 (2008); **Butler v. Fletcher,** 465 F.3d 340, 344-45 (8th Cir. 2006) (rejecting a pretrial detainee's argument that the district court had erred in applying the Eighth Amendment's deliberate indifference standard to a medical care claim), cert. denied, 127 S. Ct. 2128 (2007).

In relevant part, deliberate indifference may result from a knowing failure to administer prescribed medication, **Phillips v. Jasper Co. Jail**, 437 F.3d 791, 795-96 (8th Cir. 2006)

(reversing a grant of summary judgment upon finding a genuine issue of material fact of jail employees' deliberate indifference in the administration of prescribed medication), or from a delay in providing medical treatment, see, e.g., **Boyd v. Knox**, 47 F.3d 966, 969 (8th Cir. 1995) (affirming denial of dentist's summary judgment upon finding genuine issue of material fact of dentist's deliberate indifference when he delayed three weeks in completing a referral to an oral surgeon for an inmate who he knew had a swollen mouth and an "impacted and infected wisdom tooth").  Deliberate indifference may be shown even when medical personnel frequently attend to an inmate's medical needs.  See **Beck v. Skon**, 253 F.3d 330, 333-34 (8th Cir. 2001) (noting a medical staff's multiple contacts do not preclude a finding of deliberate indifference but finding the circumstances supported summary judgment in favor of staff members whose repeated efforts to treat the plaintiff inmate were refused); **Jolly v. Knudsen**, 205 F.3d 1094, 1097 (8th Cir. 2000) (noting same, but finding circumstances supported summary judgment in favor of the defendant physician  where the physician made repeated efforts to correct the plaintiff inmate's dosage levels).  Notably, however, the showing required for deliberate indifference to a serious medical need is more than gross negligence and more than a disagreement with treatment decisions.  **Jones v. Minnesota Dep't of Corr.**, 512 F.3d 478, 482 (8th Cir. 2008).

To establish a constitutional claim for deliberate indifference to serious medical needs, the plaintiff must demonstrate that he "suffered objectively serious medical needs and . . . that the [jail] officials actually knew of but deliberately disregarded those needs."  **Dulany v.**

**Carnahan**, 132 F.3d 1234, 1239 (8th Cir. 1997); accord **Hartsfield**, 491 F.3d at 396-97. An objectively "serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." **Coleman v. Rahija**, 114 F.3d 778, 784 (8th Cir. 1997) (quotation marks omitted) (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)); accord **Jones**, 512 F.3d at 481.

Importantly, when a delay in medical treatment is the alleged constitutional deprivation, the objective seriousness of the deprivation must also be measured "by reference to the *effect* of delay in treatment." **Beyerbach v. Sears**, 49 F.3d 1324, 1326 (8th Cir. 1995) (quotation marks omitted) (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (emphasis in Hill)); accord **Laughlin v. Schriro**, 430 F.3d 927, 929 (8th Cir. 2005); **Crowley v. Hedgepeth**, 109 F.3d 500, 502 (8th Cir. 1997). Therefore, to succeed on a delay in medical treatment claim, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." **Laughlin**, 430 F.3d at 929 (quotation marks omitted) (quoting Crowley, 109 F.3d at 502, which quoted Hill, 40 F.3d at 1188).

For purposes of summary judgment, the plaintiff's failure to offer evidence that a delay in treatment had a detrimental effect, "fail[s] to raise a genuine issue of fact on an essential element of [the] claim." **Id.**; accord **Beyerbach**, 49 F.3d at 1327. In **Beyerbach**, the inmate sued two prison officers and the prison nurse for their delay in treating the inmate's broken

hand and the lower court denied defendants' motion for summary judgment. **Beyerbach**, 49 F.3d at 1325. While noting "a broken hand could be viewed as a serious injury," the United States Court of Appeals for the Eighth Circuit reversed the denial of defendants' motion for summary judgment, because the inmate failed "to present 'verifying medical evidence' . . . that [the] defendants 'ignored an acute or escalating situation' or that [the] delays adversely affected his prognosis," given his medical condition. **Id.** at 1326 (first quoting <u>Hill</u>, 40 F.3d at 1188, and then quoting <u>Sherrer v. Stephens</u>, 50 F.3d 496, 497 (8th Cir. 1995) (per curiam)). Similarly, the Eighth Circuit has upheld the entry of summary judgment in favor of defendant prison officials when a plaintiff has failed to submit "verifying medical evidence" that a delay in treatment adversely or detrimentally affected the plaintiff's condition or prognosis. In **Laughlin**, the Eighth Circuit upheld the entry of summary judgment in favor of corrections officers and officials who delayed treating the inmate's heart attack where the inmate failed to offer evidence "establishing that any delay in treatment had a detrimental effect." **Laughlin**, 430 F.3d at 929. In **Crowley**, the Eighth Circuit affirmed summary judgment in favor of defendant prison officials when the inmate did not submit verifying medical evidence that the defendants' delay in providing the inmate with sunglasses had an adverse effect on the inmate's prognosis. **Crowley**, 109 F.3d at 502. Therefore, to avoid the entry of summary judgment in defendants' favor when the claim of deliberate indifference to serious medical needs is based on a delay in medical treatment, the plaintiff must submit verifying medical evidence of the detrimental effect the delay in treatment had on the plaintiff's condition or prognosis.

If a plaintiff satisfies the objective portion of the deliberate indifference standard, the portion showing the plaintiff suffered from objectively serious medical needs, then he must also satisfy the subjective portion of the standard, showing that the defendant officials deliberately disregarded the serious medical need, in order to succeed on his claim. To satisfy this subjective element of the deliberate indifference standard when there is allegedly intentional delay in providing medical treatment, the plaintiff must show that either "a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed." **Gordon ex rel. Gordon v. Frank**, 454 F.3d 858, 862 (8th Cir. 2006).

### Nurse Defendants' Motion for Summary Judgment

Before addressing Nurse Defendants' motion for summary judgment, the Court will clarify that it will not address a tasering incident mentioned in Nurse Defendants' affidavits supporting the motion. In particular, those affidavits include averments that Nurse Defendants did not participate in a tasering incident and did not know of any related stroke as the result of the tasering. (Paragraph 9 of Nurse Defendants' Affs., Exs. B and C attached to Nurse Defs.' Mem. Law Supp. Mot. Summ. J. [Docs. 82-2 and 82-3]; Paragraphs 7, 8, and 9 of Nurse Defs.' Statem. Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply to that Resp. [Docs. 82, 84, and 91].) One of the pro se supplements to the complaint mentions a tasering incident in relation to strokes, but that document is for another Jail inmate, not Plaintiff. (See Doc. 5-3.) There is no other tasering issue mentioned in the available record. Therefore, a tasering incident and any related stroke will not be considered with respect to any

claim or motion in this case.

In their summary judgment motion, Nurse Defendants argue that they are entitled to qualified immunity and that Plaintiff's allegations lack merit in that Nurse Defendants did not owe the duties alleged by Plaintiff, did not have the authority to carry out the obligations Plaintiff seeks to impose, and complied with physicians' orders in providing care to Plaintiff. With respect to Plaintiff's medical care, Nurse Defendants' summary judgment motion specifically addresses allegations regarding Plaintiff's thumb infection, Plaintiff's medications, and Plaintiff's glaucoma. Plaintiff opposes this motion on the grounds significant factual disputes exist regarding whether the Nurse Defendants knew Plaintiff had glaucoma, a serious medical condition, and whether the Nurse Defendants were deliberately indifferent to Plaintiff's needs regarding his glaucoma.

Nothing of record addresses whether or not Plaintiff's thumb infection or the medications for Plaintiff's various conditions other than glaucoma constitute objectively serious medical needs. Even assuming that element of the claim is met, there exists no genuine issue of material fact regarding whether Nurse Defendants were deliberately indifferent to those needs. Rather, the record supports the grant of summary judgment in favor of Nurse Defendants on this aspect of Plaintiff's claim.

With respect to the treatment of Plaintiff's thumb infection, the undisputed record discloses that Plaintiff's first complaint about this was on October 5, 2005, and he saw a nurse that day. (Paragraphs 18 and 24 of Nurse Defs.' Statem. Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply to that Resp. [Docs. 82, 84, and 91].) Within two days,

17

on October 7, 2005, Plaintiff was seen by a Jail physician, and then by a doctor outside the Jail for incision and drainage of the thumb. (Id.) The infection was also treated with antibiotics and was resolved by October 17, 2005. (Paragraph 25 of Id.) Plaintiff has not submitted evidentiary materials disputing these material facts or indicating how Nurse Defendants were deliberately indifferent with respect to this medical care.

The grievances submitted by Plaintiff in response to Jail Official Defendants' materials contain a grievance dated October 8, 2005, referring to care of Plaintiff's hand and mentioning "they" refuse to give him "more med[icine]" prescribed by the doctor but he did "get one of them." (Page 17 of Ex. 37a attached to Pl.'s Resp. to Jail Officials' Statem. Uncontr. Mat. Facts [Doc. 96-5].) The unsigned response on the grievance notes there "wasn't anything visibly wrong [with] the finger [when Plaintiff saw the doctor on] 9/30, there was no swelling or redness at that time, so the doctor had no physical symptoms to go on. [Plaintiff's] thumb is infected – [he is] on antibiotics and Ibuprofen to treat this." (Id.) This grievance contains no indication of how Nurse Defendants were involved in the complained of care.

Plaintiff has not demonstrated any genuine issue of material fact regarding any delay in the treatment of his infected thumb, and has not submitted any verifying medical evidence that any delay by Nurse Defendants in the care of his infected thumb adversely affected the infection or its prognosis, or showing Nurse Defendants ignored a critical or escalating situation. Nurse Defendants' motion for summary judgment regarding the treatment of Plaintiff's infected thumb will be granted.

With respect to the provision of medications other than those pertaining to Plaintiff's

glaucoma, the Jail's medical records submitted by Nurse Defendants, including certain of the Jail's Medical Progress Notes and the Jail's Medication Administration Records (MARs), as well as Nurse Defendants' affidavits, indicate that, throughout his stay at the Jail, Plaintiff regularly received several medications, as prescribed, for numerous conditions, including chest pain, hemorrhoids, and breathing problems. (Paragraphs 17, 22, and 27 of Nurse Defendants' Affs., Exs. B and C attached to Mem. Law Supp. Mot. Summ. J. [Docs. 82-2 and 82-3]; the Jail's Medical Progress Notes, Exs. J and N attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Docs. 82-10 and 82-14], and the Jail's MARs, Exs. K and L attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Docs. 82-11 and 82-12].) Those records further show that throughout this period of time, prescriptions either ended or were changed. (Id.) Plaintiff has not countered these evidentiary materials or otherwise disputed the evidence that the Jail's nurses dispensed the medications for conditions other than Plaintiff's glaucoma as prescribed by a physician. Notably, Plaintiff admitted in his deposition that he is not certain what medications were ordered for him while he was at the Jail. (Plaintiff's Dep. at 24, Ex. H attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. at 2 [Doc. 82-8].) More importantly, perhaps, there is no indication either that Nurse Defendants, as opposed to another nurse, were the ones responsible for the failure, if any, to provide Plaintiff with prescribed medication or that any failure to provide Plaintiff with his prescribed medications was more than mere negligence.

There is no dispute of material fact regarding Plaintiff's receipt of medications for conditions other than his glaucoma at appropriate times and dosages. Plaintiff has not

demonstrated any genuine issue of material fact regarding any delay in the administration of medications for conditions other than his glaucoma. Plaintiff has not submitted any verifying medical evidence that any delay in the administration of such medications by Nurse Defendants adversely affected either the medical conditions or the prognosis of the medical conditions being treated by those medications. Plaintiff has not submitted any verifying medical evidence to show Nurse Defendants ignored a critical or escalating situation in the administration of those medications. The undisputed record reveals no deliberate indifference in the Nurse Defendants' provision of medications to Plaintiff for those conditions. Nurse Defendants' motion for summary judgment on Plaintiff's claim regarding medications for conditions other than his glaucoma will be granted.

The Plaintiff's last claim against Nurse Defendants arises out of their treatment of Plaintiff's glaucoma during Plaintiff's initial stay at the Jail, and Defendant Kelly's care of Plaintiff's glaucoma during Plaintiff's second stay at the Jail.

There is undisputed evidence in the record for Plaintiff's position that glaucoma in and of itself may be considered a serious medical condition. Specifically, Plaintiff has submitted Dr. Fritsch's undisputed deposition testimony describing glaucoma, "which can cause blindness, [a]s certainly something that deserves urgent or emergent care." (Fritsch Dep. at 41, Ex. 11 attached to Pl.'s Statem. of Mat. Facts at 6 [Doc. 85-10] and Ex. 11a attached to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts at 10 [Doc. 96-2] and attachment to Jail Official Defs' Resp. to Pl.'s Mem. Opp'n to Jail Official Defs.' Mot. Summ. J. at 12 [Doc. 99-1].) Additionally, some courts have characterized glaucoma as a serious medical

condition for purposes of a claim that jail or prison officials were deliberately indifferent to a plaintiff's serious medical needs. <u>See</u> **Padichit v. Unknown Cook County Officials**, Civ. No. 04-388-MJR, 2006 WL 1897518, at *2 (S.D. Ill. July 11, 2006) (stating, without discussion, on review of a pretrial detainee's complaint under 28 U.S.C. § 1915A, that glaucoma is a serious medical condition); **Hussey v. Green**, No. 5:04CV00034-JWC, 2006 WL 1817085, at *2 (E.D. Ark. June 30, 2006) (finding glaucoma a serious medical condition for an inmate who had received a diagnosis and ongoing care for it), <u>aff'd sub nom. Hussey v. Evans</u>, 228 F. App'x 636 (8th Cir. 2007) (per curiam) (unpublished). Plaintiff has not, however, submitted any verifying medical evidence showing that any delay by Nurse Defendants in the treatment of Plaintiff's glaucoma adversely affected the glaucoma or its prognosis, or showing Nurse Defendants ignored a critical or escalating situation. Therefore, he has not established a genuine issue of material fact regarding the objective element of his claim that Defendant Nurses were deliberately indifferent to his serious medical need in their treatment of his glaucoma, and Nurse Defendants are entitled to summary judgment in their favor on that claim.

With respect to Plaintiff's glaucoma, the undisputed record discloses that the information the Jail received upon Plaintiff's arrival at the Jail did not mention glaucoma or any glaucoma treatment for Plaintiff. As of July 28, 2005, upon Plaintiff's arrival at the Jail, nine medications were identified for him, and his "current medical problems" were listed as: hemorrhoids, constipation, "HTN," and "COPD." (Medical Summary of Federal Prisoner/Alien in Transit, Ex. I attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc.

82-9].)  The next day, a health history form for Plaintiff was completed.  (Ex. D attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc. 82-4].)   This completed health history form mentions several diagnoses, but does not mention Plaintiff's glaucoma, does not list medications, and notes Plaintiff did not bring medications with him.  (Id.)  At that time, Plaintiff identified only two health care providers, Dr. Amy Lockhert[4] and Barnes- Jewish Hospital, that had provided him care, and the Jail obtained records from those providers. (Paragraph 13 of Nurse Defs.' Affs., Exs. B and C attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Docs. 82-2 and 82-3], and Pl.'s Dep. at 33, Ex. H attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. at 6 [Doc. 82-8].)   The two pages of Dr. Lockhert's records available to the Jail are for a June 21, 2005, admission and do not mention Plaintiff's glaucoma.  (Ex. O attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc. 82-15.]) The two pages of Barnes-Jewish Hospital's records available to the Jail are for a July 2005 admission and do not mention Plaintiff's glaucoma.  (Ex. P attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc. 82-16.])  The Jail's Medical Progress Notes for August 1, 2005, state that  Dr. Lockhert provided information that Plaintiff had several conditions, including "COPD," "HTN," hemorrhoids, arthritis, "AJHD" or "ASHD," and back pain, took several medications, and had no history of seizures.  (Page 1 of Ex. J attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc. 82-10].)   The information noted in the Jail's Medical Progress Notes for August 1, 2005, did not mention Plaintiff had, was being treated for, or had

---

[4]  In the available record, this physician's last name is spelled "Lockhart" and "Lockhert." The Court will refer to her as "Lockhert."

been taking medications for glaucoma. (Id.) Based on the records and medical history about Plaintiff provided to the Jail when Plaintiff first arrived there in the summer of 2005, Nurse Defendants had no knowledge that Plaintiff needed treatment for his eyes or for glaucoma.

As stated in his deposition, Plaintiff told the Jail doctors on several occasions after he arrived at the Jail that he had glaucoma, he needed eye drops for it, and they needed to get his medical records regarding the glaucoma. (Plaintiff's Dep. at 36-39, Ex. H attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. at 9-12 [Doc. 82-8].) Until October 26, 2005, the Jail's physicians did not direct Nurse Defendants to obtain the records of any eye care providers for Plaintiff and did not advise Nurse Defendants that Plaintiff had glaucoma. (Nurse Defs.' Affs. at para. 26, Exs. B and C attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Docs. 82-2 and 82-3].) To the extent Plaintiff reported his glaucoma and his need for medical records to the Jail physicians, their inattention, if any, to that information cannot be attributed to Nurse Defendants.

Plaintiff's deposition testimony further indicates that he may have asked Defendant Kelly to get medical records regarding his glaucoma before October 26, 2005, and that he understood the doctor directed the nurses to get records from an outside provider. (Plaintiff's Dep. at 34-36 and 39, Ex. H attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. at 7-9 and 12 [Doc. 82-8].) Under the circumstances, any request by Plaintiff to Defendant Kelly to obtain outside providers' medical records regarding Plaintiff's glaucoma before the Jail doctor ordered such records at the end of October 2005 does not create a genuine issue of material fact on Plaintiff's constitutional claim of Nurse Defendants' deliberate indifference in the

23

treatment of his glaucoma due to Plaintiff's notice to the physicians of the need for such records and the doctors' failure to direct the nurses to obtain such records before the end of October 2005.

On October 19, 2005, Plaintiff submitted a grievance not specifically mentioning glaucoma but indicating he needed eye surgery, and, on October 23, 2005, he submitted a request for medical care stating his eyes hurt, his eyes were red, he "use[d] three kind[s] of eye[] drops [but had not] use[d] any in 3 months," and he had "glycoma." (Request Slip for Medical Care that is Ex. Q attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc. 82-17] and is Ex. 9 attached to Pl.'s Statem. Uncontr. Mat. Facts regarding Nurse Defs.' Mot. Summ. J [Doc. 85-8]; Grievance that is Ex.8 attached to Pl.'s Statem. Uncontr. Mat. Facts regarding Nurse Defs.' Mot. Summ. J. [Doc. 85-7] and page 40 of Ex. 37a attached to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts [Doc. 96-5].) This is the first medical care request form available of record that expressly mentions his eyes hurt and were red.

Within three days, on October 26, 2005, Plaintiff saw the Jail's physician for his eye, among other things. (Medical Progress Notes, which are Ex. F to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc. 82-6]; Paragraph 18 of Nurse Defs.' Statem. Uncont. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply to that Resp. [Docs. 82, 84, and 91].) After examining Plaintiff, the doctor, in relevant part, directed that the records of an eye doctor Plaintiff had identified at that appointment be obtained, that an optometry appointment be scheduled to check for glaucoma, and that he be advised of the results of the optometry appointment. (Medical Progress Notes, Ex. F to Mem.Law Supp. Nurse Defs' Mot. Summ.

24

J. [Doc. 82-6].)  Within five days, on October 31, 2005, Plaintiff was transferred out of the Jail and did not return until February 7, 2006.  (Paragraph 1 of Nurse Defs.' Statem. Uncont. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply [Docs. 82, 84, and 91].)  The Jail received records from Plaintiff's eye doctor in early November, after Plaintiff had been transferred from the Jail.  (Nurse Defs.' Affs. at para. 24, Exs. B and C attached to Memo. Law Supp. Nurse Defs.' Mot. Summ. J. [Docs. 82-2 and 82-3].)  The parties dispute whether the Jail received one page or all three pages of this eye doctor's records.  (Compare the one page Ex. R attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc. 82-18] with the three page Ex. 26 attached to Pl.'s Statem. Undisp. Mat. Facts [Doc. 85-25].)  That dispute is not significant here because, by the time Plaintiff returned to the Jail in February 2006, he had an eye doctor's diagnosis of and medication for glaucoma that were provided to the Jail. Notably, the eye doctor's records were from 1999 and earlier, and included the  notation "not using samples only" next to listed eye medications.  (Ex. R attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc. 82-18]; Ex. 26 attached to Pl.'s Statem. Undisp. Mat. Facts [Doc. 85-25].)

The available record of the medical care provided for Plaintiff's glaucoma in October 2005 does not raise a genuine issue of material fact on Plaintiff's constitutional claim of Nurse Defendants' deliberate indifference in their care of his glaucoma.  With respect to the care of Plaintiff's eyes in October, there was approximately a week's delay between the October 19th grievance indicating Plaintiff thought he needed eye surgery and his visit with the Jail physician.  There was only a three day delay between Plaintiff's medical care request for his

25

reportedly painful eyes and his appointment with the Jail physician. Moreover, another nurse, not one of the Nurse Defendants, scheduled Plaintiff to see the physician on October 26, 2005, in response to his October 23, 2005, medical care request regarding his eyes.

In his opposition to Nurse Defendants' motion for summary judgment, Plaintiff argues that the Nurse Defendants failed properly to address his glaucoma prior to October 2005 because he had advised them on earlier occasions that he suffered from glaucoma. Specifically, Plaintiff points to a grievance, dated August 25, 2005, that mentions he had complained every day since the last week of July 2005 "about not rec[ei]ving [his] medication for hemorrhodial [sic] cancer, emphazema [sic], glycemo[sic][,] . . . heart disease[,] and gout. real [sic] bad pain." (Ex. 4 to Pl.'s Resp. to Nurse Defs.' Statem. Uncontr. Mat. Facts [Doc. 84-4] and to Pl.'s Statem. Undisp. Mat. Facts [Doc. 85-5].) Defendant Kelly responded that he was "being treated for health problems [and] ha[d] seen [a] doctor numerous times." (Id.) Importantly, Plaintiff saw a Jail physician that day. (Paragraph 18 of Nurse Defs.' Statem. Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply [Docs. 82, 84, and 91].) It is not clear how the Nurse Defendants could or should have done anything more at that time with regard to Plaintiff's glaucoma.

Plaintiff also points to a medical care request form, dated September 8, 2005, that mentions "glycoma." (Ex. 5 attached to Pl.'s Statem. Mat. Undisp. Facts [Doc. 84-5].) That form sought treatment, specifically a bath, for hemorrhoids "to keep [the] pain down," and mentioned Plaintiff's "lungs or [sic] getting worse each day," but did not mention a need for care of glaucoma or his eyes. (Id.) The "glycoma" reference on that form is in the section of

the form asking for "Previous History of Problem." (Id.) The unsigned response on the form states that Plaintiff has hemorrhoidal cream and was seen by a physician. (Id.) It is not clear how this form, which focuses on Plaintiff's hemorrhoids and lungs, raises a genuine issue of material fact regarding Nurse Defendants' care of Plaintiff's glaucoma, even if the response was written by Defendant Kelly. (See Gibbs Dep. at 13, Ex. 6 attached to Pl.'s Statem. Undisp. Mat. Facts at 2 [Doc. 85-5].) Moreover, the undisputed record reveals Plaintiff saw nurses on complaints of chest pain about three days before and three days after the date of this form, and there is no indication Plaintiff presented a request for care regarding his eyes or glaucoma at either of those times. (Paragraph 18 of Nurse Defs.' Statem. Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply [Docs. 82, 84, and 91].)

Finally, Plaintiff points to a Medical History he completed with Defendant Kaufmann on September 18, 2005, that mentions Plaintiff has eye problems, specifically "glaucoma." (Ex. 7 to Pl.'s Statem. Mat. Undisputed Facts [Doc. 85-6].) The undisputed record reveals that, within two weeks after the date of this Medical History, he saw a nurse and then a doctor for complaints of chest pain, gout, COPD, and hemorrhoids. (Paragraph 18 of Nurse Defs.' Statem. Uncontr. Mat. Facts, Pl.'s Resp. to that Statem., and Nurse Defs.' Reply [Docs. 82, 84, and 91].) Again, there is no indication of record that Plaintiff requested attention regarding his eyes or glaucoma at that time or that Plaintiff appeared to need medical attention for glaucoma or his eyes at that time.

In his opposition to Nurse Defendants' motion for summary judgment, Plaintiff states that these documents show Plaintiff complained of "eye pain" several times during this period.

(Page 2 of Pl.'s Mem. Opp'n to Nurse Defs.' Mot. Summ. J. [Doc. 83].) These materials, however, do not mention "eye pain." The only time Plaintiff mentioned "eye pain" was on his October 23, 2005, medical care request form, which was addressed by a different nurse and resulted in Plaintiff seeing the Jail physician within three days.

Plaintiff also states the Nurse Defendants did not follow Dr. Fritsch's October 26, 2005 directive to get Plaintiff an appointment with an optometrist. (Page 3 of Pl.'s Mem. Opp'n to Nurse Defs.' Mot. Summ. J. [Doc. 83].) It is not clear, however, that Nurse Defendants were involved in following Dr. Fritsch's directives resulting from the October 26, 2005, appointment. The doctor's directives from that examination of Plaintiff's eyes were marked "noted" by another nurse at the Jail, who also signed the request for the eye doctor's records. (Exs. F and G attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Docs. 82-6 and 82-7].) Moreover, Plaintiff left the Jail within five days after the October 26, 2005, appointment, providing little time to arrange an appointment with an optometrist outside the Jail.

Finally, in his opposition to Nurse Defendants' motion for summary judgment, Plaintiff states that he "continued to suffer eye pain and blood shot eyes" after the October 26, 2005, appointment with the doctor. (Page 3 of Pl.'s Mem. Opp'n Nurse Defs.' Mot. Summ. J. [Doc. 83].) The record reveals that on October 27, 2005, Plaintiff reported to another nurse that he had been hit in the eye by an inmate. (Ex. 12 attached to Pl.'s Statem. Undisp. Mat. Facts [Doc. 85-11].) That nurse noted the eye was bloodshot as it had "been for several days" and gave him an icepack. (Id.) Additionally, on October 30, 2005, he asked Defendant Kaufmann about his bloodshot eyes, she said "he could see the d[octo]r if he wished," and he asked to be

put on the list to see the doctor. (Ex. 13 attached to Pl.'s Statem.Undisp. Mat. Facts [Doc. 85-12].) Nothing in the record indicates the doctor was available that day. The next day, Plaintiff was transferred out of the Jail.

The undisputed record reveals no genuine issue of material fact regarding Nurse Defendants' care of Plaintiff's glaucoma during his initial stay at the Jail in 2005. Most significantly, Plaintiff has not presented any medical evidence demonstrating or raising a genuine issue of material fact that any delay in 2005 in determining Plaintiff had glaucoma or in treating Plaintiff's glaucoma adversely affected or detrimentally affected either Plaintiff's glaucoma or the prognosis for Plaintiff's glaucoma. Without such evidence, Plaintiff has not satisfied the objective serious medical need part of his deliberate indifference claim based on Nurse Defendants' treatment of his glaucoma in 2005, and has not presented a genuine issue of material fact regarding that treatment. See **Laughlin**, 430 F.3d at 929; **Crowley**, 109 F.3d at 502; **Beyerbach**, 49 F.3d at 1326.

With respect to Nurse Kelly's care of Plaintiff's glaucoma upon his return to the Jail in February, 2006, Plaintiff argues Defendant Kelly showed deliberate indifference by not promptly making an appointment for Plaintiff to see an ophthalmologist, by not promptly obtaining a prescription for a new eye medication, and by not consistently giving Plaintiff the new eye medication in February and March 2006.

The undisputed record discloses that between November 2005 and February 2006, Plaintiff's eyes were examined twice and he was diagnosed as having glaucoma that needed to be treated with eye drops. (Exs. 14, 30, 31, and 32 attached to Pl.'s Statem. Undisp. Mat.

Facts [Docs. 85-13, 85-29, 85-30, and 85-31].)  The report from the ophthalmology doctor performing the second examination on February 1, 2006, noted Plaintiff should discontinue one medication, start another eye drop medication, and followup in the future.  (Discharge Summary from St. Anthony Hospital in Oklahoma City, Oklahoma, Ex. 31 attached to Pl.'s Statem. Undisp. Mat. Facts [Docs. 85-30].)

Defendant Kelly reported in the Medical Progress Note for February 7, 2006, that Plaintiff had a diagnosis, among others, of glaucoma and had several medications, including an eye medication.  (Ex. 15 attached to Pl.'s Statem. Undisp. Mat. Facts [Doc. 85-14].)  The Jail's MAR for February 2006 reports that Plaintiff's eye drops were administered on February 7th and then provided to Plaintiff for him to administer.  (Ex. L attached to Nurse Defs.' Statem. Uncontr. Mat. Facts at 2 [Doc. 82-12]; Fritsch Dep. at 32-33, attached to Jail Official Defs.' Resp. to Pl.'s Mem. Opp'n to Jail Official Defs.' Summ. J. Mot. at 7-8 [Doc. 99-1].)

On February 8, 2006, Plaintiff submitted a medical care request form stating he needed "to see a[n] eye doctor and a surg[eon] real bad.  [He] [could]n't see very well . . . and [he] need[ed] to get all [the] med[s] that [he] ha[d] been taking."  (Ex. 16 attached to Pl.'s Statem. Undisp. Mat. Facts [Doc. 85-15].  On that same day, Plaintiff also submitted a grievance requesting to see an eye doctor, stating that his "eye [wa]s hurting . . . real bad [and] I have lost 65% of my eye," and noting he had "not g[o]t all [the] meds" that he took.  (Ex. 37a at 49, attached to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat.Facts [Doc. 96-5].)  On February 10th, Plaintiff submitted a medical care request form stating, in relevant part, that both of his "eyes [we]re red this mornin[]g and hurting."  (Ex. 17 attached to Pl.'s Statem.

Undisp. Mat. Facts [Doc. 85-16].) He was directed to sick call on that date. (Id.) On February 11th, 12th, and 15th, Plaintiff submitted grievances stating, in relevant part, that he needed to see an eye doctor. (Exs. 18 and 19 attached to Pl.'s Statem. Undisp. Mat. Facts [Docs. 85-17 and 85-18] and Ex. 37a at 56, attached to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts [96-5].)

By a request dated February 13th, Defendant Kelly obtained approval from the United States Marshal's Service for Plaintiff to see an ophthalmologist. (Ex. 20 attached to Pl.'s Statem. Undisp. Mat. Facts [Doc. 85-19].) The ophthalmologist Plaintiff saw on February 17, 2006, ordered a new medication, Cosopt, for Plaintiff's eyes, and Defendant Kelly faxed the prescription to the pharmacy on February 20th, or three days after the appointment. (Ex. T attached to Nurse Defs.' Statem. Uncontr. Mat. Facts [Doc. 82-20]; Exs. 21, 22 and 25 attached to Pl.'s Statem. Undisp. Mat. Facts [Docs. 85-20, 85-21 and 85-24].) During that appointment, Plaintiff had reported to the doctor that he had "decreased vision . . . since October 2005." (Ex. T attached to Nurse Defs.' Statem. Uncontr. Mat. Facts [Doc. 82-20]; Banks Dep. at 50, Ex. H attached to Mem. Supp. Nurse Defs.' Mot. Summ. J. at 16 [Doc. 82-8].)

The Jail's MAR for February does not reflect that Cosopt was administered to Plaintiff at any time during that month. (Ex. L attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc. 82-12].) There also is, however, no indication of record that the previous eye drops, which had been provided to Plaintiff for self-administration, were unavailable to Plaintiff during that time. (Id.)

By a grievance dated February 22, 2006, Plaintiff stated, in relevant part, that he was

"ti[red] of every day wak[in]g up hurting and going to sleep hurting. [He was] not getting [his] meds right -- [and his] eye [was still] giving [him] problem[s]." (Ex. W attached to Nurse Defs.' Reply Mem. to Pl.'s Mem.Opp'n to Nurse Defs.' Mot. Summ. J. [Doc. 93-1].) Defendant Kelly responded to this grievance, in part, by stating that the medications were "being given as ordered," that Plaintiff had "[j]ust started new eye drop[s] prescribed by [an] eye specialist – [which] will take time to show any improvement," and that Plaintiff received two pain medications daily and another "as needed." (Id.) The reference to the start of new eye drops indicates Plaintiff may have begun receiving the new eye medication around the date of the grievance, or around February 22nd.

The Jail's MAR for March 2006 clearly states that Cosopt was administered to Plaintiff, although the medication was not reported as administered twice a day every day of that month. Ex. L attached to Mem. Law Supp. Nurse Defs.' Mot. Summ. J. [Doc. 82-12].) That MAR reflects that Plaintiff received Cosopt at least once in all but one of the days of March 2006, and received it twice in over half the days of that month. (Id.) Significantly, the available record contains no indication that Plaintiff submitted a grievance or otherwise complained about any failure regularly to administer Cosopt in March 2006. The Jail's MAR for April reports that Cosopt was administered to Plaintiff twice each day during that month. (Id.)

The Jail's MARs for February, March, and April 2006 indicate that three nurses were administering medications to Plaintiff during those months, so it is not clear that Defendant Kelly was personally responsible for any failure to administer the Cosopt as prescribed in those months. (Id.)

While the available undisputed record for February through March 2006 reveals some delay by Defendant Kelly in getting Plaintiff an appointment with an eye doctor, in filling that eye doctor's prescription, and, perhaps, in administering that eye doctor's prescribed medication consistently, Plaintiff has not presented any verifying medical evidence that Defendant Kelly's apparent delays adversely affected or detrimentally affected either Plaintiff's glaucoma or the prognosis for that glaucoma. Nor has Plaintiff presented any verifying medical evidence showing that Defendant Kelly's care of Plaintiff's glaucoma in 2006 ignored a critical or escalating situation. Without such evidence, Plaintiff has not satisfied the objective part of his deliberate indifference claim based on Defendant Kelly's treatment of his glaucoma in 2006, and has not presented a genuine issue of material fact regarding that treatment. See **Laughlin**, 430 F.3d at 929; **Crowley**, 109 F.3d at 502; **Beyerbach**, 49 F.3d at 1326. Defendant Kelly's motion for summary judgment regarding the care of Plaintiff's glaucoma in 2006 will be granted.

The conclusion that Defendant Kelly is entitled to summary judgment on this part of Plaintiff's claim is also supported by the district court opinion in **Hussey**, supra. In that case, which was pursued by an inmate having glaucoma, the district court granted summary judgment in favor of infirmary personnel despite the plaintiff's allegation that for two months "he verbally reminded [the] infirmary personnel . . . 'day in and day out' . . . that the pharmacy had failed to supply him with his eye medication." **Hussey**, 2006 WL 1817085, at *4. The court acknowledged that "[c]hronic care medications such as glaucoma eye drops should be consistently administered," but concluded that the plaintiff's "medical records d[id] not reveal

that the lack of drops negatively impacted his glaucoma." **Id.** The court also noted the infirmary personnel's "failure to intervene quickly to resolve the situation[, despite the plaintiff's repeated verbal notification to the defendants,] amount[ed] to negligent conduct [and was] certainly less than medically professional." **Id.** Finding that the plaintiff "ha[d] failed to place *any* medical evidence in the record at all to establish that the interruptions in his medication had a detrimental effect on his glaucoma," and that the plaintiff had not disputed the medical evidence presented by the defendants, the district court found the defendants had not ignored a critical or escalating situation and were not deliberately indifferent to the plaintiff's serious medical needs. **Id.**

In this case, the delay in obtaining Plaintiff's examination by an ophthalmologist in February 2006, and then in obtaining the eye medication prescribed by that eye doctor, was less than one month, and the period of time when Plaintiff reportedly did not consistently receive his new eye drop medication was approximately one month, with Plaintiff having access to another eye drop medication he self-administered during at least some of that time. Moreover, Plaintiff has not presented any verifying medical evidence regarding any affect of these delays on his glaucoma or its prognosis, or showing that these delays evidence Defendant Kelly's ignorance of a critical or escalating situation. While the record regarding the 2006 delays in treatment provided by Defendant Kelly may show negligent or less than professional medical care, the record is not sufficent to establish a genuine issue of material fact exists on Plaintiff's constitutional claim against Defendant Kelly regarding that care.

Under the circumstances, there is no genuine issue of material fact and Nurse

Defendants are entitled to judgment as a matter of law on Plaintiff's constitutional claims for damages based on allegations of Nurse Defendants' deliberate indifference to Plaintiff's serious medical needs to the extent those claims are pursued against these Defendants in their individual capacity. Based on this determination, the Court does not need to address Nurse Defendants' qualified immunity argument. Because Nurse Defendants are not liable in their individual capacity on Plaintiff's § 1983 damages claims, they cannot be held liable in their official capacity on those claims. **Brockinton**, 503 F.3d at 674. Nurse Defendants' motion for summary judgment will be granted.

Jail Official Defendants' Motion for Summary Judgment

Jail Official Defendants move for summary judgment on the grounds there are no genuine issues of material facts and the undisputed facts show that Plaintiff was provided with proper medical care, that Plaintiff was not treated with deliberate indifference, and that Jail Official Defendants are entitled to qualified immunity. (Page 1 of Jail Official Defs.' Mem. Law and Statem. Undisp. Mat. Facts Supp. Mot. Summ. J. [Doc. 89].) Plaintiff opposes the motion on the grounds genuine issues of material fact exist regarding Defendant Jordan's knowledge of Plaintiff's serious medical needs, whether the Jail Official Defendants were deliberately indifferent to Plaintiff's serious medical needs, and whether those defendants are protected from liability based on qualified immunity.

"Prison officials cannot substitute their judgment for a medical professional's prescription," **Meloy v. Bachmeier**, 302 F.3d 845, 849 (8th Cir. 2002), or for the medical staff's diagnostic decisions, **Camberos v. Branstad**, 73 F.3d 174, 176 (8th Cir. 1995).

Therefore, Jail Official Defendants cannot be liable for any medical professional's medical diagnosis, referral, and treatment decisions during the course of treating Plaintiff.

Additionally, the prison officials' general responsibility for supervising the facility's operations is not sufficient to establish the personal involvement necessary to support liability for deliberately indifferent medical care. **Keeper v. King**, 130 F.3d 1309, 1313 (8th Cir. 1997); **Camberos**, 73 F.3d at 176. Supervisory jail personnel may be liable for deliberate indifference to serious medical needs only if they are aware of or personally involved in allegedly unconstitutional conduct. **Smith v. Clarke**, 458 F.3d 720, 723 (8th Cir. 2006).

> We have held a supervisor is only liable for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). (footnote omitted). The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye [to it]. Id. (internal quotation marks omitted).

**Meloy**, 302 F.3d at 849.

Nothing in the record indicates either Jail Official Defendant was present when Plaintiff sought or received any medical care from Nurse Defendants. Nothing in the record shows that Defendants Mulcahy and Jordan were personally or directly involved in any medical care challenged by Plaintiff in this case.

The undisputed record does reveal that Defendant Jordan was involved in the Jail acquiring medical services through Advanced Correctional Healthcare, and that Defendant Mulcahy was involved in the transportation of Plaintiff to appointments with medical providers outside the Jail. (Mulcahy Dep. at 15 and 20, Ex. 33 to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts at 6 and 7 [Doc. 96-3].) None of Plaintiff's claims, however, arise out of or focus on the acquisition of Advanced Correctional Healthcare's services or on the transportation of Plaintiff to appointments with outside medical care providers.

The undisputed record also reveals that Defendant Mulcahy regularly, and Defendant Jordan may have occasionally, had conversations with Defendant Kelly and other Jail staff about Plaintiff, and that Defendant Mulcahy and Plaintiff may have discussed Plaintiff's glaucoma. (See, e.g., Kelly Dep. 40, Ex. 1a attached to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts at 7 [Doc. 96-1]; Mulcahy Dep. 51, attached to Jail Official Defs.' Mot. Summ. J. at 11[Doc. 88-2]; Banks Dep. 65, attached to Jail Official Defs.' Mot. Summ. J. at 3 [Doc. 88-1].) While Plaintiff may have been the topic of conversation among several Defendants, the record does not reveal the time or subject matter of those conversations. To the extent Defendant Mulcahy and Plaintiff may have discussed the existence of Plaintiff's glaucoma, nothing in the record indicates when the conversation took place or whether that conversation had anything to do with the Jail's treatment of Plaintiff's glaucoma. Without more, the available record of the parties' conversations cannot substantiate or raise a genuine issue of material fact about Jail Official Defendants' personal involvement in or knowledge of the challenged medical care Plaintiff received at the Jail.

To establish Defendant Mulcahy's personal involvement in the challenged medical care, Plaintiff points to the undisputed evidence about when grievances were brought to Defendant Mulcahy's attention, for instance, when "medical [personnel] thought that [he] needed to be involved" or when a grievance was appealed. (Mulcahy Dep. 13, 15, and 24, Ex. 33 to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts at 5, 6, and 8 [Doc. 96-3]). The record is not clear, however, about the extent to which Defendant Mulcahy actually reviewed or was notified about Plaintiff's grievances regarding the medical care Plaintiff challenged in this

lawsuit. Without more, Defendant Mulcahy's involvement in the Jail's grievance process does not support a determination that he is liable to Plaintiff under § 1983 for the medical treatment at issue in this case or that there exists a genuine issue of material fact regarding such liability.

Plaintiff also points to the deposition testimony of Lt. Ryan Rueseler, a Jail employee who reviewed grievances, to support his position that Defendant Mulcahy was aware of Plaintiff's challenged medical care. Specifically, Lt. Rueseler testified that he could not recall giving Defendant Mulcahy any of Plaintiff's grievances, but he discussed Plaintiff's situation with Defendant Mulcahy on "[a]lmost a daily basis." (Rueseler Dep. 14, Ex. 34 to Pl.'s Resp. to Jail Official Defs.' Statem. Undisp. Mat. Facts at 2 [Doc. 96-4].) The subject matter of these "almost daily" conversations is not available of record and cannot, therefore, be the basis for determining Defendant Mulcahy had notice of or personal involvement in any medical care Plaintiff challenges in this lawsuit, or for determining there is a genuine issue of material fact about such notice or involvement. To the extent Plaintiff relies on the fact he filed a large number of grievances and grievances regarding his medical care during his stay at the Jail, the number of grievances alone does not support a determination or raise a genuine issue of material fact regarding Jail Official Defendants' liability due to the absence of evidence regarding those Defendants' involvement with any grievances relevant to the conduct challenged by Plaintiff in this case.

Finally, Plaintiff points out that Jail Official Defendants' liability could be based on their failure "to properly train, supervise, direct or control the actions of a subordinate who causes injury." **Crooks v. Nix**, 872 F.2d 800, 804 (8th Cir. 1989). Nothing in Plaintiff's

allegations or evidentiary materials, however, intimates that this is the basis of the constitutional claims against Jail Official Defendants.

Without more, there is no genuine issue of material fact regarding and no basis for Jail Official Defendants' liability in their individual capacity on Plaintiff's constitutional claims for damages under 42 U.S.C. § 1983. Therefore, Jail Official Defendants' motion for summary judgment will be granted on the claims against Jail Official Defendants in their individual capacity and those claims will be dismissed. Under the circumstances, the motion will also be granted on the claims against those Defendants in their official capacity, and the Court will not discuss those Defendants' qualified immunity argument.

The Court appreciates the diligent assistance Plaintiff's appointed counsel provided in this challenging case.

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Nurse Defendants' Motion for Summary Judgment [Doc. 81] is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that Jail Official Defendants' Motion for Summary Judgment [Doc. 88] is **GRANTED**.

A separate Judgment shall be entered in accordance with this Order.

/s/Thomas C. Mummert,III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  19th  day of September, 2008.